UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSE ALVAREZ,<br><br>Petitioner(s),<br>v.<br><br>WARDEN NORTHWEST ICE PROCESSING CENTER, et al.,<br><br>Respondent(s). | CASE NO. C26-3837-KKE<br><br>ORDER GRANTING HABEAS PETITION |

Petitioner has been detained since October 1, 2026, and, representing himself, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, requesting either release or a bond hearing. Dkt. No. 1. The Government's[1] return asserts that Petitioner is mandatorily detained under 8 U.S.C. § 1231(a). Dkt. No. 9.

Although Petitioner was previously subject to an order of removal, the Government has not properly reinstated it against Petitioner. Because this defect renders invalid Petitioner's detention under Section 1231(a), and violates Petitioner's right to due process, the Court will grant his habeas petition.

[1] This order refers to the Federal Respondents collectively as "the Government."

## I. BACKGROUND

Petitioner is a citizen of Mexico who entered the United States in 2009 without inspection and thereafter encountered United States Border Patrol agents. Dkt. No. 11 ¶¶ 4–5. Petitioner was served with an expedited removal order sometime in spring 2009, although the record is inconsistent as to the dates and circumstances of his removal.[2] Dkt. Nos. 10-6, 10-7, 11. At some unknown time thereafter, Petitioner re-entered the United States without detection. Dkt. No. 11 ¶ 8. During a targeted immigration enforcement operation on October 1, 2026, U.S. Immigration and Customs Enforcement ("ICE") officers encountered Petitioner and served him with a notice of intent/decision to reinstate the 2009 expedited removal order. Dkt. No. 10-4. On that day, ICE issued a warrant to arrest Petitioner and he remains detained at the Northwest ICE Processing Center ("NWIPC") pending removal. *Id.* at 5.

Petitioner filed this petition on October 8, 2026. Dkt. No. 1. He avers that he is the father of a five-year-old child who is a United States citizen. *Id.* at 1. Petitioner's wife (the child's mother) died of cancer in 2024, leaving Petitioner as the sole caregiver for his son.[3] *Id.* Citing these circumstances, Petitioner filed a motion for temporary restraining order ("TRO") with his petition seeking an order preventing his removal during the pendency of his petition. Dkt. No. 2. The Court denied the TRO motion, finding that the risk of irreparable harm of imminent removal was ameliorated by the notice requirement included in the Court's scheduling order. Dkt. No. 6.

---

[2] Along with its return, the Government filed a declaration of Deportation Officer Yralees Melendez, stating that Petitioner entered the United States and was apprehended on March 19, 2009, and removed on March 20, 2009, at Nogales, Arizona. Dkt. No. 11 ¶¶ 4–7. However, the notice of intent to reinstate the prior removal order states that Petitioner's prior removal order was entered on May 4, 2009 (Dkt. No. 10-6), and the warrant of removal states he was removed on May 9, 2009 (Dkt. No. 10-7).

[3] With his petition, Petitioner filed proof of citizenship for his son, his son's school registration documents identifying Petitioner as his father, his wife's death certificate, proof of residence, proof of employment, a 2024 tax return and a 2025 tax form, and two letters of support from friends. Dkt. No. 1-1.

The Court did, however, grant Petitioner's request for an expedited briefing schedule on the petition in light of the seriousness of the issues raised by his detention. *Id.*

On October 12, 2026, the Government notified Petitioner of its intent to remove him from the United States during October 2026. Dkt. No. 8. On October 16, 2026, the Government filed its return. Dkt. No. 9. The Court finds it unnecessary to await further briefing before considering whether the Government has shown that the petition should not be granted.

## II. DISCUSSION

To succeed on a habeas petition, a petitioner must show he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. The Due Process Clause of the Fifth Amendment protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. CONST. amend. V. "'It is well established that the Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

Here, Petitioner contends that his detention without a bond hearing is unlawful (Dkt. No. 1), and the Government contends that Petitioner "is subject to a reinstated expedited removal order"[4] and is mandatorily detained under 8 U.S.C. § 1231(a) during the 90-day removal period. Dkt. No. 9 at 1. For the following reasons, the Court finds that Petitioner's removal order has not been properly reinstated and that his detention is therefore not authorized by Section 1231(a).

[4] The Court notes that it lacks jurisdiction to review the Government's discretionary decision to reinstate Petitioner's removal order, but retains jurisdiction to review the constitutionality of his detention. *See, e.g.*, *Walter Antonio M.S. v. Chestnut*, No. 2:26-cv-01134-TLN-AC, 2026 WL 2110882, at *2 n.5 (E.D. Cal. July 22, 2026) (finding that 8 U.S.C. § 1252(g) does not preclude a constitutional challenge to petitioner's current confinement).

**A. Legal Standards**

*1. Procedure for Reinstating a Prior Order of Removal*

If a noncitizen is removed from the United States on an order of removal and later reenters the United States illegally, the prior removal order may be reinstated. *See Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 487 (9th Cir. 2007) (en banc). To reinstate the prior order, an immigration officer must establish that the noncitizen (1) has been subject to a final order of removal; (2) is the individual that was previously removed pursuant to that final order of removal; and (3) unlawfully reentered the United States. 8 C.F.R. § 241.8(a). To satisfy the first requirement, the immigration officer must obtain the prior order of removal. *Id.* § 241.8(a)(1). With respect to the second requirement, if the noncitizen disputes that the prior order applies to him or her, then "verification of identity shall be accomplished by a comparison of fingerprints." 8 C.F.R. § 241.8(a)(2). And to make the third determination,

> the officer shall consider all relevant evidence, including statements made by the [noncitizen] and any evidence in the [noncitizen's] possession. The immigration officer shall attempt to verify [a noncitizen's] claim, if any, that he or she was lawfully admitted, which shall include a check of Service data systems available to the officer.

*Id.* § 241.8(a)(3). The officer must provide the noncitizen with notice of their determination and allow the noncitizen to make a statement contesting the determination. *Id.* § 241.8(b). The officer "shall consider whether the [noncitizen's] statement warrants reconsideration of the determination." *Id.*

If the prior removal order is reinstated, it is "reinstated from its original date and is not subject to being reopened or reviewed[.]" 8 U.S.C. § 1231(a)(5). "[T]he [noncitizen] is not eligible and may not apply for any relief under this chapter, and … shall be removed under the prior order at any time after the reentry." *Id.* Under regulations governing reinstated removal orders, however, if a noncitizen expresses "a fear of returning to the country designated in his

reinstated removal order" then he or she shall be "immediately referred to an asylum officer for an interview to determine whether the [noncitizen] has a reasonable fear of persecution or torture[.]" 8 C.F.R. § 241.8(e). The procedures for the reasonable fear interview are set out in 8 C.F.R. § 208.31 and include the opportunity for a noncitizen to present evidence and witnesses, to have access to an interpreter, and to be represented at no cost to the Government. *See* 8 C.F.R. § 208.31(c). At the conclusion of the interview, the asylum officer must prepare a written summary of the material facts as stated by the applicant, review the summary with the noncitizen, and provide the noncitizen an opportunity to correct any errors therein. *Id*. A negative finding by an asylum officer is reviewable by an immigration judge. *Id.* § 208.31(g).

2. *Mandatory Detention Under Section 1231(a)*

Detention of noncitizens ordered removed is mandatory during the 90-day period following the entry or reinstatement of a final order of removal. 8 U.S.C. § 1231(a)(2)(A); *Zadvydas*, 533 U.S. at 682 ("When [a noncitizen] has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the [noncitizen's] removal during a subsequent 90-day statutory 'removal period,' during which time the [noncitizen] normally is held in custody."). Noncitizens whose prior removal orders are reinstated are not eligible for individualized bond hearings, but a noncitizen may nonetheless "pursu[e] withholding-only relief to prevent [the Government] from executing his removal to the particular country designated in his reinstated removal order." *See Johnson v. Guzman Chavez*, 594 U.S. 523, 526, 530 (2021). The Ninth Circuit has held that "in order to preserve judicial review over petitions challenging administrative determinations made pursuant to 8 C.F.R. § 208.31(e) or (g)" where a noncitizen "pursues reasonable fear and withholding of removal proceedings following the reinstatement of a prior removal order, the reinstated removal order does not become final until

the reasonable fear of persecution and withholding of removal proceedings are complete." *Ortiz-Alfaro v. Holder*, 694 F.3d 955, 958 (9th Cir. 2012).

**B. Petitioner's Prior Removal Order Was Not Properly Reinstated.**

Although the Government's return states that Petitioner's prior order of removal was reinstated, the record submitted in support of that position is replete with inconsistencies and errors. First, on the October 1, 2026 notice of intent/decision to reinstate prior order of removal (Form I-871), the deportation officer's name and title are typed, but the space for the signature of the officer providing notice is left blank. Dkt. No. 10-6. The I-871 also states that Petitioner's prior order of deportation/exclusion/removal was entered on May 4, 2009, but that Petitioner was removed on March 20, 2009, "pursuant to an order of deportation/exclusion/removal." *Id*. On that form, a deportation officer checked the box that states Petitioner elected not to contest the immigration officer's determinations that led to the reinstatement, and the acknowledgement box for Petitioner's signature is stamped with "Refused to Sign." *Id*. Yet given the errors in the documentation as detailed in this order, the Court is left with little confidence that Petitioner was provided a meaningful opportunity to review or contest the officer's determinations.

Based on that notice of intent, the Government issued a warrant for Petitioner's arrest also on October 1, 2026. Dkt. No. 10-5.[5] On October 5, 2026, the Government issued a warrant of removal/deportation. Dkt. No. 10-7. This document describes—in the section addressing the port, date, and manner of Petitioner's prior removal—Petitioner's "Expedited Removal May 4th, 2009 removed May 9th 2009." Dkt. No. 10-7 at 3. Neither of these dates correspond to the expedited

[5] The warrant is in English, and the immigration officer left blank the section of the warrant stating in which language Petitioner received notice. Dkt. No. 10-5.

removal order or to the description of Petitioner's prior removal in the Melendez declaration. *See* Dkt. Nos. 10-2, 10-3, 11.

In addition to these errors, neither the original removal order nor the reinstated removal order, nor the Government's recent notice of intent to remove, identify a country of removal. Dkt. Nos. 8, 10-2, 10-6, 10-7. Without such a designation, Petitioner cannot have been afforded an opportunity to express fear of removal to that country.[6] The Government's return acknowledges that Petitioner has the right to reasonable fear screening procedures, but fails to address whether or how Petitioner has been provided an opportunity to invoke them if Petitioner has not been provided notice of his country of removal. *See* Dkt. No. 9 at 5 n.3.

This Court and others in this circuit have "concluded that due process requires the Government to give a noncitizen 'sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation.'" *Kumar v. Wamsley*, 817 F. Supp. 3d 1059, 1069 (W.D. Wash. 2025) (quoting *Phong Thanh Nguyen v. Scott*, 796 F. Supp. 3d 703, 727 (W.D. Wash. 2025)). And on facts more closely analogous to Petitioner's, a court has found that the Government's failure to comply with the reinstatement procedures in 8 C.F.R. § 241.8 renders a petitioner's detention under Section 1231 defective and justifies release. *Osorto Reyes v. Blanche*, No. 2:26-cv-02372-SPC-NPM, 2026 WL 2546101, at *2 (M.D. Fla. Aug. 28, 2026).

On this record, which contains multiple errors and inconsistencies of significant magnitude, the Court cannot conclude that Petitioner's prior removal order has been properly reinstated. The

[6] The documentation of Petitioner's arrest in the Form I-213 mentions that someone with a different name than Petitioner was asked whether they fear return to Mexico, and that person refused to answer. Dkt. No. 10-4 at 4. The I-213 also notes that Petitioner will be detained at NWIPC "pending removal to Mexico" (*id.* at 5) but there is no evidence that Petitioner was provided a copy of this document, such that this reference could constitute notice of a designated country of removal. Notably, the Melendez declaration does not address any reasonable fear inquiry. *See* Dkt. No. 11.

Government acknowledges one of these inconsistencies, but fails to explain why this inconsistency is immaterial or whether it bears on the propriety of the Government's actions here. Dkt. No. 9 at 3 n.2. According to its own regulations, ICE must provide noncitizens with written notice of its reinstatement determinations and with the ability to contest those determinations. *Gonzalez Lopez v. Wesling*, 828 F. Supp. 3d 284, 293 (D.R.I. 2026) (citing *Guzman Chavez*, 594 U.S. at 530; 8 C.F.R. § 241.8(b)). "Indeed, the essential requirements of procedural due process include adequate notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* (citation modified). Under the circumstances of this case, the Court finds that "ICE's failure to follow its own regulations, and the resulting violation of Petitioner's due process rights, renders its action invalid." *Maza v. Nessinger*, No. 1:26-cv-00577-MSM-AEM, 2026 WL 2530099, at *1 (D.R.I. Aug. 27, 2026).

Because the Government has not shown that it has properly reinstated Petitioner's prior order of removal, or provided Petitioner with a meaningful opportunity to express fear of removal to a designated country, the Court finds that Petitioner's constitutional right to due process has been violated.

## III. REMEDY

Having determined that Petitioner's right to due process has been violated, the Court concludes his detention is unlawful and will grant his habeas petition. The Court must now determine the appropriate remedy.

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "Declaratory and injunctive relief are proper habeas remedies." *Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022).

Here, the Court finds that the appropriate remedy for Petitioner's unconstitutional re-detention is immediate release. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."); *see also Gonzalez Lopez*, 828 F. Supp. 3d at 294–95 (granting petition and ordering release where Government did not comply with regulations governing reinstated expedited removal order); *Osorto Reyes*, 2026 WL 2546101, at *2 (same).

## IV. CONCLUSION

For these reasons, the Court GRANTS the habeas petition. Dkt. No. 1. The Court ORDERS that no later than October 20, 2026, Petitioner shall be released from custody. The Government shall file a status report no later than October 21, 2026, confirming Petitioner's release in compliance with this order.

Dated this 19th day of October, 2026.

Kymberly K. Evanson
United States District Judge